

David L. Bissett
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PATRICK HIGGINS, | ) | |
| | ) | Case No. 1:22-bk-410 |
| Debtor. | ) | Chapter 13 |
| | ) | |
| _____ | ) | |
| | ) | |
| PATRICK HIGGINS and, | ) | |
| RYAN W. JOHNSON, Chapter 13 | ) | |
| Trustee for the Bankruptcy Estate | ) | |
| Of Patrick Higgins, | ) | |
| | ) | |
| Higgins, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 1:23-ap-4 |
| | ) | |
| RONALD O. LANE, | ) | |
| MARY ROBINSON, | ) | |
| CHANC EVANS, and | ) | |
| JASPER MILLER's, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RONALD O. LANE, | ) | |
| | ) | |
| Cross-Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARY ROBINSON, | ) | |
| | ) | |
| Cross Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Pending before the Court is a motion for partial summary judgment.  Patrick Higgins ("Higgins") and Ryan Johnson, Chapter 13 Trustee for the Bankruptcy Estate of Patrick Higgins (collectively, "Plaintiffs"), seek partial summary judgment against Ronald Lane ("Lane"), Mary Robinson ("Robinson"), Chanc Evans, and Jasper Miller's, Inc. (collectively, "Defendants"), seeking a determination that the deed in lieu of foreclosure executed between Higgins and Lane is invalid.  Robinson's Response includes a Counter Motion for Partial Summary Judgment seeking a determination that the Court find the deed in lieu of foreclosure is valid.  Specifically, Plaintiffs assert the deed in lieu of foreclosure is unenforceable because Lane did not provide post-default consideration to Higgins for the deed in lieu of foreclosure.  Defendants contend that the deed in lieu of foreclosure is valid and enforceable because Higgins received post-default consideration from Lane, the transaction was absent of undue advantage, and it reflected overall fairness.

For the reasons stated herein, the Court will deny the Plaintiffs' Motion for Partial Summary Judgment and grant Robinson's Counter Motion for Partial Summary Judgment.

### I.        STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing: first, the apparent absence of any genuine dispute of material fact; and second, the movant's entitlement to judgment as a matter of law on the basis of undisputed facts.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of proof to establish that there is no genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Demonstrating an absence of any genuine dispute as to any material fact satisfies this burden.  *Id*. at 323.  Material facts are those necessary to establish the elements of the cause of action.  *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material — thereby precluding summary judgment — only if the disputed fact is determinative of the outcome under applicable law.  *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); see also *Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322-23. The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798. However, the court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for a trial." *Anderson*, 477 U.S. at 249. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317, 323-24.

## II.      BACKGROUND

In August of 2021, Lane contracted with Kauffman Realty and Auctions of West Virginia ("Kauffman") to conduct an auction for the sale of his property located in Arnoldsburg, West Virginia. On August 17, 2021, Kauffman realtor and auctioneer, Wayne Yoder, conducted an online auction. Higgins submitted the winning bid of $780,000. Under the auction terms, Higgins also owed a 10% buyer's premium of $78,000, bringing the total purchase price to $858,000. On August 19, 2021, Higgins electronically signed the auction purchase agreement. The auction purchase agreement required Higgins to deliver a $85,000 nonrefundable deposit within 48 hours, not contingent upon Higgins obtaining financing. Higgins defaulted by failing to pay the required deposit within the 48-hour deadline.

On August 26, 2021, after Higgins defaulted, his attorney, Michael Partlan, contacted Yoder to renegotiate the purchase terms. Higgins proposed a forbearance agreement to prevent Lane from terminating the transaction and putting the property back up for auction. The terms included a reduction of the initial deposit to $50,000 due on September 2, 2021, a second nonrefundable deposit of $175,000 due on September 30, 2021, and a third nonrefundable deposit of $125,000 due at closing. The proposal also required Higgins to exhaust financing options over sixty to ninety days or Lane to provide owner financing with interest only payments of $4,233.33, to be paid monthly for 24 months following closing, and the remainder of the purchase price due within 24 months of closing. Lastly, in exchange for Lane providing owner financing, Higgins offered to execute a deed in lieu of foreclosure at closing to be held in escrow. In the event of Higgins' default, Lane could record the deed in lieu and regain possession of the property following a seven-day grace period. Higgins represented that he was familiar with deeds in lieu of foreclosure

because he was involved in real estate transactions utilizing them.  Further, Higgins admitted to having vast experience in commercial and residential real estate transactions as both a real estate agent and broker, including involvement in property sales, real estate auctions, and owner financing agreements.  Unlike Higgins, Lane did not have legal counsel representing him during the negotiations regarding the terms of the new purchase agreement.

Lane accepted Higgins' offer and executed a new real estate purchase agreement reflecting the proposed terms.  Higgins defaulted on this agreement by failing to tender the $50,000 deposit when due.  In response, Lane requested Yoder contact other bidders regarding potential interest in the property.  On September 8, 2021, Higgins sent Kauffman the $50,000 deposit.  Lane formally executed the forbearance agreement on September 29, 2021, and Higgins executed it on September 30, 2021.  However, Higgins failed to make the $175,000 nonrefundable deposit due on September 30, 2021.

Lane repeatedly agreed to delay the closing date based on Higgins' representations that he would obtain investors, sell other properties, or otherwise secure the funds necessary to complete the purchase.  On November 11, 2021, Higgins, through Partlan, proposed an addendum to the forbearance agreement to induce Lane to delay closing until November 5, 2021.  The addendum provided that $100,000 of the $150,000 held in escrow would be released to Lane.  The parties executed the addendum on November 5, 2021.

On January 11, 2022, the parties closed and executed a negotiable promissory note, deed of trust, and deed in lieu of foreclosure.  Attorney Robinson prepared these documents and reviewed the nature and impact of a deed in lieu of foreclosure to both Higgins and Lane.  At the closing, Higgins again represented that he had previously used deeds in lieu of foreclosure and did not object or voice any concerns about agreeing to execute a deed in lieu of foreclosure in favor of Lane to be held in escrow as a remedy for Higgins' default.

Higgins tendered $258,000, which was approximately $100,000 less than what was due at closing under the forbearance agreement.  Higgins acknowledged this default and requested the parties amend the forbearance agreement to include a late fee of $150 per day and increase the interest-only monthly payments to $5,066.67 for the period from February 1, 2022 to April 1, 2022. Higgins represented that he would sell his other properties and use the proceeds to pay the promissory note in full.  The parties dispute whether Higgins defaulted on his monthly payments and the events following his alleged default.

On September 16, 2022, Higgins filed a Chapter 13 petition. On March 14, 2023, Plaintiffs initiated this adversary proceeding against Defendants, alleging, in part, the deed in lieu of foreclosure executed between Higgins and Lane is unenforceable.  On October 21, 2024, the parties filed a Joint Motion to Suspend the Scheduling Order to Decide the Issue of Validity of Deed in Lieu of Foreclosure (Doc. No. 142), stipulating the following:

> Debtor, Patrick Higgins, entered into a transaction with Defendant Ronald Lane for the purchase of real estate in Calhoun County. The transaction involved owner–financing with a Promissory Note secured by a Deed of Trust. In addition, at closing Higgins executed a Deed in Lieu of Foreclosure, with the blanks for the referenced deed book and page as well as a blank for the amount of the remaining balance, to be held in trust by the trustee. The Promissory Note and Deed of Trust provided that the Deed in Lieu could be recorded without conducting foreclosure proceedings under W.Va. Code §38–1–1 et seq. Lane declared a default under the Promissory Note and the Deed in Lieu was recorded, and subsequently Lane sold the property to Defendant Jasper Miller's Inc. Higgins did not acknowledge to being in default or consent to the recording of the Deed in Lieu at the time it was recorded. Defendants maintain Lane did not need such acknowledgement or consent as neither was required by the Promissory Note and Deed of Trust.

On October 25, 2024, this Court entered an Agreed Order granting the parties' Joint Motion Suspending the Scheduling Order and Staying Consideration of the Motion to Amend Complaint (Doc. No. 144) pending resolution of the limited issue of validity of the deed in lieu of foreclosure. This Court further permitted the parties to file memoranda of law addressing the issue of the validity of the deed in lieu of foreclosure.

After briefing, on March 20, 2025, this Court entered an Order Vacating the Court's Order Granting the Joint Motion (Doc. No. 156).  In the Order, this Court found Virginia law instructive in the absence of clear law in West Virginia regarding the validity of deeds in lieu of foreclosure. Based on its initial impression of the stipulated facts, this Court noted that it appeared that Lane "clogged" Higgins's equity of redemption.  However, this Court concluded that its survey of authority and the limited stipulated facts were insufficient for it to make a final determination of the validity of the deed in lieu of foreclosure.  Accordingly, this Court declined to rule on the validity of the deed in lieu of foreclosure at that time.

On September 3, 2025, Plaintiffs filed a Motion for Partial Summary Judgment (Doc. No. 199) asking the Court to determine the validity of the deed in lieu of foreclosure.  On September 11, 2025, this Court held Plaintiffs' Motion in Abeyance Pending Further Order (Doc. No. 201). On January 21, 2026, this Court held a pre-trial hearing in which the trial of this matter was

continued, by the parties' request to allow proper disclosure and discovery of expert testimony regarding malpractice claims, to June 16, 17, and 18, 2026, and ordered Defendants to respond to Plaintiffs' Motion for Partial Summary Judgment.  On February 20, 2026, Lane filed a Memorandum in Opposition to Plaintiffs' Motion (Doc. No. 232), Robinson filed a Response to Plaintiffs' Motion and Counter Motion for Partial Summary Judgment (Doc. No. 233), and Chanc Evans and Jasper Miller's, Inc. filed a Response to Plaintiffs' Motion (Doc. No. 235).  On March 9, 2026, Plaintiffs filed an Omnibus Reply to Defendants' Responses to Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 237).

## III.   DISCUSSION

Plaintiffs filed the pending Motion for Partial Summary Judgment alleging the deed in lieu of foreclosure is unenforceable because Lane did not provide Higgins post-default consideration for the deed in lieu of foreclosure.  Defendants oppose Plaintiffs' Motion for Partial Summary Judgment, and Robinson seeks Partial Summary Judgment arguing the deed in lieu is enforceable because Lane provided adequate consideration, the transaction was free of undue advantage, and fair in all respects.

West Virginia law provides little direct guidance on the validity of deeds in lieu of foreclosure, and no statute clearly authorizes their use.  This Court previously addressed the issue in *In re David*, 612 B.R. 349 (Bankr. N.D.W. Va. 2020) but declined to determine the validity of a deed in lieu because the lender did not record the instrument. *Id.* at 359.  The Court nevertheless recognized that, under West Virginia common law, a confession of judgment is valid only within a judicial proceeding involving service of process. *Id.* at 358–59 (citing *A.B. Farquhar Co. v. Dehaven*, 75 S.E. 65, 67–68 (W. Va. 1912)).  Although the Court later observed that an advance deed in lieu may not pose a confession-of-judgment problem in a nonjudicial foreclosure jurisdiction, it ultimately reserved judgment because it could not determine at summary judgment whether foreclosure under the deed of trust was the exclusive means of enforcing the lender's interest. *In re David*, 612 B.R. at 368–69, 371.

In the absence of clear West Virginia authority, Virginia law is instructive.  Virginia recognizes that the equity of redemption is an inseparable incident of every mortgage. *Snavely v. Pickle*, 70 Va. 27 (1877); *Dawson v. Perry,* 30 Va. Cir. 372, 373 (May 5, 1993).  Courts applying Virginia law have consistently held that a deed in lieu of foreclosure executed as part of the initial mortgage transaction, with instructions permitting recordation upon future default, is void and

unenforceable as an impermissible "clog" on the mortgagor's equity of redemption. *Greene v. East Coast Marketing, Inc. (In re Greene)*, 2007 WL 1309047, at \*5 (Bankr. E.D. Va. May 3, 2007); see also *Dawson*, 30 Va. Cir. at 373.  The Restatement similarly prohibits advance waivers of the equity of redemption and recognizes foreclosure as the debtor's historic right for terminating the mortgagor's interest. *Greene*, 2007 WL 1309047, at \*5.

An exception exists where a party conveys away its equity of redemption and the transfer is supported by adequate consideration, no undue advantage, and overall fairness. *Greene*, 2007 WL 1309047, at \*6 (quoting *Snavely*).  Such transactions are valid only upon "jealous scrutiny" by a court of equity. *Id.*

Here, there is no genuine dispute of material fact that the deed in lieu of foreclosure is valid because Lane provided Higgins with adequate consideration, the transaction was absent of undue advantage, and fair in all respects, and the movant is entitled to summary judgment.  First, Lane provided Higgins with adequate consideration for the deed in lieu of foreclosure because Lane agreed to forbear from enforcing Higgins's default under the auction purchase agreement and provided owner financing.  Second, the transaction was absent of undue advantage because Higgins proposed the deed in lieu of foreclosure, understood the legal consequences of deeds in lieu of foreclosure, was experienced in real estate transactions, and was represented by counsel.  Third, the transaction was fair in all respects because Higgins knowingly and voluntarily entered into the agreement, proposed its terms, and received adequate consideration.  The Court's findings are strictly limited to whether the deed in lieu of foreclosure is valid in its creation.  Whether the deed in lieu of foreclosure was properly recorded or void for another reason is not the inquiry before this Court on Plaintiffs' Motion for Partial Summary Judgment or Robinson's Counter Motion for Partial Summary Judgment.

## 1. There is no genuine dispute that Lane provided Higgins with adequate consideration for the deed in lieu of foreclosure.

A debtor's equity of redemption cannot be extinguished when it is conveyed as part of a single real estate transaction and the debtor receives no new consideration for forfeiting that equity. *Dawson,* 30 Va. Cir. at 375-376.  The equitable principle against clogging the right of redemption does not apply where the right is relinquished by a "subsequent agreement upon further consideration . . ." *Schwartz v. Halwani* (In re 274 Atl. Isles, LLC), 651 B.R. 319, 329 (Bankr. S.D.

6

Fla. 2023) *(quoting Ringling Joint Venture II v. Huntington Nat'l Bank*, 595 So. 2d 180, 182-183 (Fla. Dist. Ct. App. 1992)*.*

In *Dawson v. Perry,* the court held a deed in lieu of foreclosure that the parties executed at the same time as the purchase agreement was invalid and unenforceable. *Dawson*, 30 Va. Cir. 376. The debtor and seller of the real property entered into a purchase agreement where the seller would provide financing, contingent upon the debtor obtaining a deed in lieu of foreclosure executed in favor of the seller and recorded upon the debtor's default. *Id.* at 372.  However, the court held the deed in lieu of foreclosure was not valid because the seller would not have provided financing but for execution of the deed in lieu of foreclosure in the seller's favor. *Id.* at 376.  Therefore, the court held the deed in lieu was "in effect, a provision of the mortgage itself." *Id.*  In other words, the seller's financing was consideration for both the deed of the trust and deed in lieu of foreclosure. *Id.* at 375.  The deed in lieu was unenforceable because it was executed as part of the same transaction as the mortgage and was not supported by independent consideration. *Id.* at 376.

By contrast, in *Ringling Joint Venture II v. Huntington National Bank*, the court upheld a deed in lieu of foreclosure because it was part of a later agreement supported by new consideration. *Ringling Joint Venture II,* 595 So. 2d at 183.  In *Ringling*, the debtor defaulted on its mortgage obligations and the first of three mortgage holders initiated foreclosure proceedings. *Id.* at 181.  To resolve the foreclosure, the third mortgagor agreed to provide a new loan to the debtor under revised documents. *Id.*  The revised documents included a conveyance agreement that provided for a deed in lieu of foreclosure to be held in escrow to be delivered if the debtor defaulted. *Id.* The court reasoned:

> Technically, Ringling may be correct that the conveyance agreement is not a "subsequent agreement" because it was created in conjunction with new mortgage documents.  Nevertheless, it is an agreement subsequent to the promissory notes and mortgages involved in the earlier foreclosure proceeding. It is clear that this agreement was given to avoid foreclosure and that Ringling received valuable new consideration to relinquish its right of redemption.

*Id.* The court held that the deed in lieu of foreclosure was valid because the agreement was negotiated with the intent to resolve an existing foreclosure dispute, and the debtor received new consideration in exchange for agreeing to the escrow agreement. *Id.* at 182-183.

Similarly, in *Schwartz v. Halwani,* the debtor defaulted on a loan secured by real property, prompting the lender to initiate foreclosure proceedings. *Schwartz*, 651 B.R. at 325.  Rather than proceed with the foreclosure, the parties entered into a forbearance agreement where the debtor

7

executed a deed in lieu of foreclosure to be held in escrow. *Id.*  The court found the deed in lieu of foreclosure was valid because it was supported by adequate consideration because the lender granted the debtor additional time to cure the default. *Id.* at 329.

Here, the parties executed the deed in lieu of foreclosure, after Higgins defaulted on the auction purchase agreement, as part of a subsequent agreement supported by independent consideration, making this case analogous to *Ringling* and *Schwartz*, rather than *Dawson*.  Despite Plaintiffs' argument to the contrary, the parties' initial transaction was the auction purchase agreement, which required Higgins to pay an $85,000 nonrefundable deposit and tender the purchase price at closing.  However, Higgins breached his obligation to pay the deposit.  As a result, Lane had the right to declare default, terminate the transaction, and re-market the property. Rather than Lane exercise those rights, Higgins proposed the parties enter a subsequent, post-default forbearance agreement. Under that agreement, Lane agreed to forbear from declaring a breach and selling the property to another bidder. Lane further agreed to provide owner financing so the transaction could proceed, which he was under no obligation to accommodate.  In exchange, Higgins executed a deed in lieu of foreclosure, which he offered, to be recorded in the event of a future default.

Plaintiffs' reliance on the merger doctrine is without merit as they disregard the post-default nature of the forbearance agreement and attempt to characterize the forbearance agreement as "pre-closing negotiations."  This Court cannot ignore that Higgins proposed the forbearance agreement in response to his default under the auction purchase agreement.  Unlike *Dawson*, where the deed in lieu was required at the inception of the transaction as a condition for seller-financing, Higgins proposed the deed in lieu of foreclosure only after his default under the auction purchase agreement and after parties entered post-default negotiations. Therefore, this sequence of events is a subsequent workout agreement recognized in *Ringling* and *Schwartz*, not a unitary transaction like in *Dawson*.  Further, Lane provided new and independent consideration to support the deed in lieu of foreclosure by agreeing to forbear from enforcing Higgins's default and provide owner financing.  Because the deed in lieu of foreclosure was executed as part of a subsequent agreement to the auction purchase agreement and supported by adequate consideration, it does not impermissibly clog the equity of redemption.  Accordingly, there is no genuine dispute that the deed in lieu of foreclosure was supported by adequate consideration.

**2. There is no genuine dispute that the transaction was absent of undue advantage.**

When determining whether a deed in lieu of foreclosure is valid, courts scrutinize the circumstances of the transaction for indicia of undue advantage.  For instance,

> "Courts are more inclined to uphold deeds in lieu of foreclosure in the context of a workout.  This is especially true in cases where a sophisticated commercial borrower is involved, where there is no disparity in bargaining power and negotiating strength, where the borrower is represented by knowledgeable counsel, where there is an acknowledged loan default, where there is little or no equity in the mortgaged property, and where there is actual and meaningful consideration for the deed in lieu of foreclosure such as a forbearance agreement or a release of personal liability."

*Greene,* 2007 WL 1309047, at \*19-20.  Accordingly, a creditor may not exploit their position as a mortgagee to oppress the debtor or force an unconscionable agreement. *Shaw v. Walbridge*, 33 Ohio St. 1, 6 (1877).

Here, the deed in lieu of foreclosure transaction is absent of undue advantage.  Higgins is a sophisticated borrower because, by his own admission, he has vast experience in commercial and residential real estate transactions having worked as a real estate agent, broker, and having owned, purchased, and sold numerous properties.  Importantly, Higgins represented that he was familiar with deeds in lieu because he had previously utilized them in other real estate transactions and understood that it would allow Lane to reclaim title without formal foreclosure.  He further represented to Lane and Yoder that the deed would permit Lane to treat him as a renter subject to eviction in the event of Higgins's default.  Moreover, Lane did not exploit his position to force an unconscionable agreement because Higgins voluntarily proposed the deed in lieu of foreclosure after acknowledging his breach of the auction purchase agreement. Also, there was no disparity of bargaining power in favor of Lane because legal counsel represented Higgins throughout the forbearance agreement negotiations.

Plaintiffs' reliance on Robinson's alleged malpractice does not create a genuine dispute that the transaction was absent of undue advantage. Any alleged professional misconduct by Robinson does not outweigh the undisputed fact that Higgins proposed the deed in lieu of foreclosure and was represented by independent counsel during forbearance agreement negotiations.  Further, even assuming Robinson committed the alleged malpractice, such conduct would not create undue advantage in favor of Lane. Any deficiency in Robinson's dual representation would have equally harmed both parties, rather than enabling Lane to exploit

Higgins or secure an undue advantage.  Because Higgins was experienced, represented by counsel, and fully aware of the consequences of the deed in lieu of foreclosure, there is no genuine dispute that this transaction was free from undue advantage.

### 3. There is no genuine dispute that the transaction was in all respects fair.

The requirement of overall fairness is closely related to absence of undue advantage. A court of equity must hold an otherwise valid conveyance to "jealous scrutiny" and "determine that the transaction was 'in all respects fair.'" *Dawson*, 30 Va. Cir. at 372 (quoting *Snavely*, 70 Va. 35); see also *Ringling Joint Venture II,* 595 So. 2d at 183 (holding an agreement "intended to assist Ringling in a prior foreclosure was not an unfair scheme to take Ringling's equity in the property or its right of redemption").  For instance, the court in *Dawson* held that the transaction was not 'in all respects fair' because the debtor was an elderly, unsophisticated person whose home was foreclosed upon. *Dawson*, 30 Va. Cir. at 376*.*  The debtor used the money she received from the foreclosure as a downpayment to re-purchase her home. *Id.*  The debtor and seller entered into a purchase agreement in which the seller provided financing, and at settlement, the debtor signed a deed conveying the property back to the seller to be recorded in the event of default. *Id.*  In executing the deed, the debtor relied on the seller and "did not know what a deed of trust was and believed that upon default there would be a foreclosure, and she could receive a return of equity after a foreclosure sale." *Id.*

Here, the transaction between Higgins and Lane reflects overall fairness.  As previously stated, Higgins was not only experienced in real estate transactions, but he also proposed the deed in lieu himself and understood its legal consequences.  Because Higgins proposed the terms of the forbearance agreement, including the deed in lieu of foreclosure, there is no evidence Lane intended the agreement to be an unfair scheme to take Higgins's equity in the property.  Unlike the debtor in *Dawson*, Higgins did not rely on Lane for explanation or guidance regarding the deed in lieu of foreclosure and was fully aware that it would transfer title to Lane without Higgins having the equity of redemption.  Further, Robinson's alleged professional misconduct does not render this otherwise fair and voluntary transaction unfair or void.  Again, Higgins' sophistication, voluntary proposal of the deed in lieu, and representation by independent counsel during forbearance agreement negotiations support the overall fairness of the transaction.  Accordingly, there is no genuine dispute that the deed in lieu of foreclosure reflects overall fairness.

There is no genuine dispute of material fact that the deed in lieu of foreclosure does not impermissibly clog the equity of redemption and is valid and enforceable because Lane provided adequate consideration, the transaction was absent of undue advantage, and it was fair in all respects.  Therefore, the movant is entitled to judgment as a matter of law.

### IV.     CONCLUSION

For the foregoing reasons, the Court finds it appropriate to deny Plaintiffs' Motion for Partial Summary Judgment, and grant Robinson's Motion for Partial Summary Judgment. Consistent with Fed. R. Civ. P. 58, made applicable by Fed. R. Bankr. P. 7058, the Court will enter an order stating as much.